UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JAMES E. PHILLIPS,          )
          )
     Plaintiff,       )
          )
     v.         )    No. 2:24-cv-00074-JPH-MG
          )
V. LINCOLN Maintenance, et al.,    )
          )
     Defendants.    )

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff James Phillips, an inmate within the Indiana Department of Correction ("IDOC"), brought this action against Defendants Travis Crane, Richard Yarber, Phillip Ivy, and Vanessa Lincoln, alleging that his Eighth Amendment rights were violated when he was subjected to unreasonably cold temperatures while housed at Wabash Valley Correctional Facility ("Wabash Valley"). Mr. Phillips has moved for summary judgment, dkt. [38], and the Defendants have filed a cross-motion for summary judgment, dkt. [50]. For the reasons below, the Defendants' motion, dkt. [50], is **GRANTED** and Mr. Phillips's motion, dkt. [38] is **DENIED**.

## I.
### Motion to Strike Defendants' Motion for Summary Judgment

Mr. Phillips has filed a motion to strike the Defendants' motion for summary judgment, arguing that it violates Local Rule 56-1(b), (c), (d), and (i) by improperly responding to his motion for summary judgment and adding a collateral motion. Local Rule 56-1 governs the summary judgment process:

1

**(b) Non-Movant's Obligations**. A party opposing a summary judgment motion must, within 28 days after the movant serves the motion, file and serve a response brief and any evidence . . . .

**(c) Reply**. The movant may file a reply brief within 14 days after a response is served.

**(d) Surreply**.  A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response . . . .

\*        \*        \*

**(i) Collateral Motions**. The court disfavors collateral motions— such as motions to strike—in the summary judgment process. Any dispute over the admissibility or effect of evidence must be raised through an objection within a party's brief.

Defendants' summary judgment filings, however, do not violate Local Rule 56-1. This case is proceeding on cross-motions for summary judgment because both Mr. Phillips and Defendants have moved for summary judgment. *See* dkt. 50; dkt. 59. Defendants therefore filed one response in opposition to Mr. Phillips's motion, dkt. 45; dkt. 49, and a separate brief in support of its own motion for summary judgment, dkt. 52. That does not make any of Defendants' briefs an improper reply or surreply under Local Rule 56-1(b)–(d). Also, Defendants' motion to substitute its response in opposition brief was filed to correct citation errors, so it is not an improper collateral motion under Local Rule 56-1(i).[1] Even if any of Defendants' filings had violated Local Rule 56-1,

---

[1] The Defendants have filed a motion to substitute their response in opposition to Mr. Phillips's motion for summary judgment, dkt. [49], due to errors in the original response, dkt. 45. That motion, dkt. [49], is **GRANTED**, so the Court considers the revised response at docket 49-1 rather than the original response.

that rule allows the Court to "in the interest of justice or for good cause, excuse failure to comply strictly with this rule. S.D. Ind. L.R. 56-1(l). The Court would do so here because Defendants' filings appropriately address the designated evidence and issues before the Court at summary judgment.

Mr. Phillips's motion to strike is therefore **DENIED.** Dkt. [59].

## II.
## Cross-Motions for Summary Judgment

### B. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. Of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477

U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(e)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## B. Factual Background

Mr. Phillips's motion for summary judgment includes some facts unrelated to the claims in this case and other "facts" that are conclusory legal statements. The Court considers only facts supported by admissible designated evidence. *See* S.D. Ind. L.R. 56-1(e) ("A party must support each fact the party asserts in a brief with a citation to . . . admissible evidence. . . . The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."); *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) ("Summary judgment is not a time

to be coy: conclusory statements not grounded in specific facts are not enough.") (cleaned up). The following facts are not in dispute except at noted.

### 1. The Parties

Mr. Phillips was housed at Wabash Valley within B East 500 Range in the Secured Confinement Unit (SCU) starting on October 6, 2023. Dkt. 46-1 at 13-16, 35-36.

Defendant Richard Yarber was employed by IDOC as a Lieutenant within the SCU at Wabash Valley. Dkt. 46-2 at 1. Defendant Phillip Ivy was employed by IDOC as a Sergeant within the SCU at Wabash Valley. Dkt. 46-3 at 1. Defendant Travis Crane was employed by IDOC as an Officer within the SCU at Wabash Valley. Dkt. 46-4 at 1.

Defendant Vanessa Lincoln was employed by IDOC as a clerical assistant within Wabash Valley's maintenance department. Dkt. 46-2 at 1. As a clerical assistant within the maintenance department, her duties and responsibilities included checking incoming mail, checking emails for submitted work orders, printing work orders and providing them to the appropriate maintenance staff, and ordering parts as needed. *Id.* She did not have authority over temperature settings within the housing units and sometimes responded to grievances sent to the maintenance department. *Id.* at 2.

### 2. Temperature Issues at Wabash Valley

Within the B East 500 range in the SCU there was an Indoor Recreation Pad Access Door that led to an indoor recreation pad. Dkts. 46-2 at 2, 46-3 at 2. The recreation pad contained a partially ventilated area towards the ceiling

5

with small holes. Dkts. 46-2 at 2, 46-3 at 2. The parties dispute whether the door was "broken." Dkt. 38 at 5. The door was a solid steel door that had small airflow gaps that were covered with a brushing material to prevent airflow around the door into the range. Dkts. 46-2 at 2-3, 46-3 at 2, 46-4 at 2. Additionally, blankets were placed along the bottom of the Indoor Recreation Pad Access Door to further prevent airflow into the range. *Id.* Lt. Yarber testified that discussions were conducted regarding sealing the door with a rubber piece; however, it was determined that the rubber would cause the door to not operate correctly due to catching. Dkt. 46-2 at 2-3. Mr. Phillips's cell was located six cells away from the Indoor Recreation Pad Access Door at the farthest end of the range. Dkt. 46-1 at 32.

During the relevant period, the lowest temperature at Wabash Valley within the SCU was 63 degrees Fahrenheit during the day and 60 degrees Fahrenheit during the night. Dkt. 46-6.

Defendant Yarber testified that when he was made aware of complaints of cold temperatures in the SCU, he went to the reported area, removed the inmate, and took the temperature of the cell walls and vent to check the temperature of the cell and incoming air. Dkt. 46-2 at ¶ 7. When Defendants Yarber and Ivy personally checked the temperatures using a laser thermometer in the SCU, they did not witness low temperatures. Dkts. 46-2 at 2, 46-3 at 1.

While housed in the SCU, Mr. Phillips had a mattress, two sheets, a winter coat, a jumpsuit, t-shirt, socks, shoes, and a toboggan. Dkt. 46-1 at 38-39. The parties dispute whether Mr. Phillips was provided additional blankets,

6

but Lt. Yarber testified that incarcerated individuals were provided two blankets and additional clothing, and blankets could be provided to inmates as requested. Dkt. 46-2 at 2.

The parties dispute whether Mr. Phillips requested to speak with Defendants Yarber, Crane, and Ivy regarding alleged leaks from the recreation door. Dkt. 38 at 5. Each of these Defendants has no recollection of Mr. Phillips communicating with them about cold temperatures in the SCU. Dkt. 46-4 at ¶ 6, 12[2]; dkt. 46-3 at ¶ 17; dkt. 46-2 at ¶ 19.

Mr. Phillips filed a grievance alleging cold temperatures in his cell and that the recreation access door was broken. Dkt. 46-5 at 2-3. Defendant Lincoln responded to that grievance in early January 2024. *Id.* After she spoke with the facility's Physical Plant Director, it was determined that the heating system was working properly within the unit and that maintenance staff were discussing options to help prevent airflow around the recreation access door. *Id.*

Around February 6, 2024, Mr. Phillips was moved from the B East 500 range to another range. Dkt. 51-1. Mr. Phillips never sought any medical attention for cold-related injuries. Dkt. 46-1 at 40.

**C. Discussion**

Mr. Phillips brings Eighth Amendment conditions of confinement claims regarding the cold temperatures. Dkt. 16. Defendants argue that they are

---

[2] Officer Crane also testified that he was stationed in the Control Pod, which "did not contain an intercom system to the cells," limiting any direct communication channel between Mr. Phillips and Officer Crane. Dkt. 46-4 at ¶ 6, 12.

entitled to summary judgment because (1) they did not violate Mr. Phillips's Eighth Amendment rights; and (2) they are entitled to qualified immunity. Dkt. 52.

### 1. Eighth Amendment Deliberate Indifference

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To succeed on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show that (1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm, and (2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

In short, a plaintiff must establish an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). The objective showing means "that the conditions are sufficiently serious—i.e., that they deny the inmate the minimal civilized measures of life's necessities, creating an excessive risk to the inmate's health and safety." *Id.* (internal quotation omitted). "According to the Supreme Court, . . . 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting

*Hudson*, 503 U.S. at 9). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (cleaned up).

In addition to the objective component, a plaintiff must establish a "subjective showing of a defendant's culpable state of mind," which is one of "deliberate indifference to the inmate's health or safety." *Id.* Thus, negligence or even gross negligence cannot by itself support a § 1983 claim. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

### 2. Objectively Serious Conditions

The Seventh Circuit has considered various levels and durations of cold temperatures—and accommodations for those temperatures—in determining whether a constitutional violation exists. *See Haywood v. Hathaway,* 842 F.3d 1026, 1030 (7th Cir. 2016) (Eighth Amendment would have been violated if inmate had been confined for 60 days in a cell with a broken window and temperatures below freezing with blowers blowing and guards refusing to provide blankets or a coat). In *Mays v. Springborn,* the Seventh Circuit held that allegations of being denied adequate clothing in the winter such that the inmate "suffered from hurt ears and numb hands, felt frostbite, and caught colds" did "not rise to the level of the objectively serious harm necessary to show an Eighth Amendment violation." 575 F.3d 643, 648 (7th Cir. 2009). The inmate was provided a winter coat, boots, and hat, and "did not show that he

9

was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter." *Id.* at 646, 648.

In sum, temperatures "so low" that they "cause severe discomfort" can violate the Eighth Amendment. *Dixon v. Godinez,* 114 F.3d 640, 644 (7th Cir. 1997). "[C]ourts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Dixon,* 114 F.3d at 644.

Here, Mr. Phillips has not designated evidence about how cold his cell was, except that he felt it was "extremely cold" and he could not sleep. *See* dkt. 38; dkt. 39 at 2. He also testified that "had no -- no thermometer or thermostat," so he could not "guesstimate" a temperature that could "be considered as factual." Dkt. 46-1 at 47. Mr. Phillips therefore has not contested Defendants' designated evidence from contemporaneous temperature logs that, during the relevant period, the lowest temperature in the SCU was 63 degrees Fahrenheit during the day and 60 degrees Fahrenheit during the night. Dkt. 46-6. Mr. Phillips also testified that, while housed in the SCU, he had a mattress, two sheets, a winter coat, a jumpsuit, t-shirt, socks, shoes, and a toboggan. Dkt. 46-1 at 38-39. So even if the SCU had a broken door that let air circulate, Mr. Phillips has not designated evidence "that he suffered anything more than the usual discomforts of winter." *Mays,* 575 F.3d at 648.

Mr. Phillips therefore has not designated evidence from which a reasonable jury could find the objectively serious harm necessary to show an Eighth Amendment violation. *See James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020) ("[A] plaintiff may not rely on mere allegations or denials in his complaint when opposing a properly supported motion for summary judgment."). The uncontested designated evidence shows that this is not a case like *Dixon*, where "ice formed on the walls and remained throughout the winter" and the prison provided "a single blanket." 114 F.3d 640 (7th Cir. 1997); *see also Gillis v. Litscher*, 468 F.3d 488, 490 (7th Cir. 2006) (allegations that inmate was forced to sleep naked on concrete floor and had to walk around his cell 14 hours a day to try to stay warm were severe enough to go to trial); *Henderson v. DeRobertis*, 940 F.2d 1055, 1057-58 (7th Cir. 1991) (record showed, among other things, broken windows, no heat on the cellblock, and temperatures in the cellblock that were below freezing).

Because Mr. Phillips has not designated evidence to show a genuine issue for trial on the objective component of his deliberate indifference claim, Defendants are entitled to summary judgment.

### III.
### Conclusion

The Defendants' motion to amend/correct, dkt. [49], is **GRANTED**. Mr. Phillips's motion to strike, dkt. [59], is **DENIED**. The Defendants' motion for summary judgment, dkt. [50], is **GRANTED** and Mr. Phillips's motion for summary judgment, dkt. [38] is **DENIED**.

Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/18/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JAMES E. PHILLIPS
106333
WABASH VALLEY – CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

All Electronically Registered Counsel